## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RONNETTE BROOKS,

            Civil Action No.:

    Plaintiff,

  V.

MANATEE MEMORIAL HOSPITAL,
LIMITED PARTNERSHIP, D/B/A
LAKEWOOD RANCH MEDICAL
CENTER,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ronnette Brooks ("Ms. Ronnette Brooks" or "Plaintiff"), as and for her Complaint against Defendant Manatee Memorial Hospital, Limited Partnership, d/b/a Lakewood Ranch Medical Center ("Manatee Memorial," the "Company" or "Defendant"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff is an African American female. She is employed as a Registered Nurse House Supervisor at Defendant's hospital.

2. Plaintiff is one of two African Americans in leadership positions at Defendant's hospital.

3.     Plaintiff has been treated differently at work by being denied the same terms and conditions of employment available to non-African American employees.

4.     Defendant has retaliated against Plaintiff for complaining about unequal treatment on the basis of her race by altering her working conditions and taking adverse employment actions against her.

## NATURE OF CLAIMS

5.     Ms. Ronnette Brooks brings this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. Ann. §§ 760.01 et seq. ("FCRA").

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII, the EPA, and the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper in this county pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

8.     On October 1, 2024, Plaintiff filed an EEOC Charge of Discrimination, which was dual filed with the Florida Commission on Human Relations, alleging violations of Title VII and the FCRA. The EEOC issued Plaintiff a Notice of Right to Sue dated January 15, 2025.

9.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

10.     Plaintiff is a resident of Hillsborough County, Florida. She works for Defendant in Lakewood Ranch, Florida. At all relevant times, Plaintiff met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

11.     Defendant Manatee Memorial Hospital, Limited Partnership is a hospital located in Lakewood Ranch, Florida, and was, at all relevant times, an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

### I.    BACKGROUND

12.     Defendant is a hospital located in Lakewood Ranch, Florida.

13. Plaintiff, an African American female, began her employment with Defendant as a Registered Nurse ("R.N.") on a per diem basis with varied shifts on October 11, 2022.

14. Plaintiff applied for and was accepted to the position of full-time R.N. House Supervisor on November 29, 2022, at which time she began working for Defendant full-time.

15. Plaintiff is one of two African Americans in leadership positions at the hospital.

16. As House Supervisor, Plaintiff's responsibilities require her to perform certain administrative tasks, including scheduling her own work shifts.

17. At the time Plaintiff began her position as full-time R.N. House Supervisor, it was explained to Plaintiff that she was to self-schedule her own work shifts using the desktop calendar in the office by filling in the days she wanted to work and the days she needed or wanted off.

18. Kelley Swinkles ("Swinkles"), a white female employed as Defendant's Clinical Operations Director and Plaintiff's direct supervisor, informed Plaintiff she was expected to work two eight-hour shifts per week and one 12-hour shift on Saturday and Sunday every other week. Plaintiff's shifts were to be opposite those of Kristi Tuttle ("Tuttle"), a white female House Supervisor employed by Defendant.

## II. UNFAIR SCHEDULING PRACTICES

19.     Shortly after Plaintiff commenced her new role, Swinkles informed Plaintiff that Tuttle prefers to work Sundays, Mondays, and Fridays every week and as such, Plaintiff would be expected to work on Saturdays every week.

20.     Plaintiff advised Swinkles that she did not want to work every Saturday.

21.     In response to Plaintiff's objection to working every Saturday, Swinkles advised Plaintiff in that case, Plaintiff and Tuttle would each have to work a 12-hour shift every other weekend.

22.     Swinkles' directive regarding Plaintiff and Tuttle each working a 12-hour shift every other weekend caused tensions in the workplace as Tuttle openly expressed dissatisfaction with having to work on Saturdays every other week.

23.     Plaintiff took a pre-scheduled vacation in March 2023. When she returned to work, she noticed she had been scheduled to work on the weekend of March 25, 2023, despite that weekend being Tuttle's weekend to work.

24.     Plaintiff asked Swinkles about the March 25, 2023 schedule change. Swinkles immediately became irate and informed Plaintiff that Tuttle had covered for Plaintiff during her vacation. Plaintiff reminded Swinkles that she had also previously covered for Swinkles and Tuttles during their vacation and sick days.

25.     Plaintiff further informed Swinkles she had not previously been informed that if she was going to be out from work, she needed to secure

coverage for her own shifts herself as Swinkles usually secured coverage for Tuttle's absences.

26.     Later that evening, Plaintiff was excluded from a group chat via text message which included all of Defendant's House Supervisors. The purpose of the group chat was to discuss coverage for Tuttle's upcoming Saturday shift as Plaintiff was not able to cover the shift.

### III.     MS. RONNETTE BROOKS COMPLAINS OF DISCRIMINATION

27.     On March 23, 2023, Plaintiff sent a letter to Judy Young ("Young"), Defendant's Chief Nursing Officer, regarding the unfair scheduling issues she was facing. Young did not acknowledge or respond to Plaintiff's letter. However, Swinkles requested a meeting with Plaintiff to discuss the letter she sent Young.

28.     In or around April 2023, Plaintiff attended a meeting with Swinkles and Jeanette Parks-Johnson, Defendant's Director of Orthopedics. During the meeting, Swinkles advised Plaintiff that Tuttle believed that if she had to work on Saturdays and Sundays every other week, then Plaintiff should have to work on the Fridays before Tuttle's Saturday and Sunday shifts. Swinkles further advised that she agreed with Tuttle.

29.     Plaintiff questioned Swinkles regarding whether this latest directive was in line with the Company's scheduling policies, especially because it seemed her schedule was being impacted solely based on Tuttle's desires.

30. Nevertheless, Plaintiff began scheduling herself to work on the Fridays before Tuttle's weekend shifts in an attempt to put the scheduling issues behind her.

## IV. UNFAIR SCHEDULING PRACTICES CONTINUE AND RETALIATION

31. Plaintiff was out of work on a medical leave from July 1, 2023 to September 15, 2023. When she returned to work, the schedule showed Tuttle scheduled to work her desired weekly shifts: Sundays, Mondays, and Fridays.

32. Plaintiff informed Swinkles about Tuttle scheduling herself to work her preferred schedule and not scheduling herself according to the directive previously given to them by Swinkles. In response, Swinkles advised Plaintiff this schedule worked during Plaintiff's leave and that Tuttle would like to work every Sunday.

33. Plaintiff advised Swinkles she did not want to work every Saturday just because Tuttle desired to work every Saturday. Plaintiff further inquired about the Company's scheduling policy and the expectations for her regarding working on weekends.

34. Swinkles reaffirmed that the Company's policy requires Plaintiff to work every other weekend.

35. Towards the end of 2023, Tuttle again began scheduling herself to work every Sunday.

36.    Plaintiff continued to schedule herself to work every other weekend pursuant to Swinkles' scheduling directive.

37.    Shortly thereafter, Swinkles reprimanded Plaintiff for scheduling herself to work every other weekend and accused Plaintiff of "shorting" Tuttle's hours by working every other weekend. Swinkles further advised Plaintiff that Tuttle would work on Sundays and Plaintiff was to work on Tuesdays (essentially shorting Plaintiff's hours by allowing Tuttle to take Plaintiff's Sunday shifts).

38.    On several other occasions, Swinkles has required Plaintiff to work additional shifts to cover lapses in the work schedule and has threatened to change Plaintiff's schedule herself if Plaintiff does not "figure out" how to get the subject shifts covered.

39.    Plaintiff's colleagues, including Tuttle, are not subject to the same scheduling requirement when Plaintiff is absent from work as Plaintiff is required to find someone to cover her shifts herself prior to her absence.

40.    On January 8, 2024, Plaintiff sent a letter to Sonia Joyner, Defendant's Human Resources, regarding not being treated fairly regarding the schedule and Tuttle's preference towards Tuttle.

41.    On May 22, 2024, Plaintiff was given verbal coaching and issued an Employee Corrective Action Report allegedly for discussing her concerns regarding her unfair treatment with the Director of another department outside of her chain of command.

42.    On June 3, 2024, Plaintiff submitted a letter to Defendant's Corporate Human Resources department according to the Company's dispute resolution policy regarding the unfair treatment, discrimination, and retaliation she had experienced.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII)**

43.    Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII by denying Plaintiff the same terms and conditions of employment available to non-African American employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination.

44.    As a direct and proximate result of the unlawful discriminatory conduct committed by Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

45.    As a direct and proximate result of the unlawful conduct committed by Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

46.     Defendant's unlawful and discriminatory actions were done with willful negligence, recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

47.     Defendant retaliated against Plaintiff for complaining about unequal treatment on the basis of her race by altering her working conditions.

48.     As a direct and proximate result of the unlawful retaliatory conduct committed by Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

49.     As a direct and proximate result of the unlawful retaliatory conduct committed by Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

50.     Defendant's unlawful and retaliatory actions were done with willful negligence, recklessness, or a conscious disregard of the rights of Plaintiff or

conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the FCRA)

51.    Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race in violation of the FCRA.

52.    Defendant's conduct was willful, and they knew that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

53.    Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the FCRA)

54.    Defendant retaliated against Plaintiff for complaining about unequal treatment on the basis of her race, by altering her working conditions. Defendant's conduct showed willful and/or wanton negligence, recklessness, and conscious disregard for Plaintiff's statutorily protected rights.

55.    Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the federal and state laws;

B. An injunction and order permanently restraining Defendant from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An order directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

D. An award of damages against Defendant in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E. An award of compensatory damages;

F. An award of punitive damages;

G. An award of liquidated damages;

H. Prejudgment interest on all amounts due;

I. An award of costs that Plaintiff incurs in this action, as well as an award of reasonable attorneys' fees, costs, and disbursements to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff demands a trial by jury in this action.

Dated:        April 14, 2025

Respectfully submitted,

**TORIBIO LAW PLLC**
10401 Post Office Blvd, #622135
Orlando, FL 32862-2135
Telephone: (321) 320-7477
Facsimile: (321) 593-0273
*Attorneys for Plaintiff*

By:**/s/*Luis Toribio*___**
Luis R. Toribio, Esq.
Florida Bar Number: 106211
luis@toribiolaw.com